UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH PICINI, JR. and MICHELLE
PICINI,

                Plaintiffs,       <u>MEMORANDUM & ORDER</u>
                                 11-CV-2393(JS)(GRB)

     -against-

CHASE HOME FINANCE LLC and
JPMORGAN CHASE BANK, N.A.,

                Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:     Timothy William Salter, Esq.
                  Lester & Associates, P.C.
                  600 Old Country Road, Suite 229
                  Garden City, NY 11530

For Defendants:    Cynthia Ann Augello, Esq.
                  Cullen and Dykman LLP
                  100 Quentin Roosevelt Boulevard
                  Garden City, NY 11530

SEYBERT, District Judge:

        Plaintiffs Joseph Picini, Jr. and Michelle Picini sued

Defendants Chase Home Financing, LLC and JPMorgan Chase Bank,

N.A. ("JPMorgan" and, together, "Defendants") in a case that

arises out of Plaintiffs' attempt to modify their home mortgage

loan. Pending before the Court is Defendants' motion to dismiss

(Docket Entry 4); for the following reasons, this motion is

GRANTED IN PART AND DENIED IN PART.

<u>BACKGROUND</u>

        The following facts are taken from the allegations in

Plaintiffs' Complaint and assumed to be true for the purposes of

this motion. Plaintiffs are homeowners who, at all relevant times, lived in Farmingdale, New York. (Compl. ¶¶ 10-11.) Plaintiffs' home loan was secured by a note and mortgage to JPMorgan in the principal amount of $359,650. Chase Home Financing is a mortgage loan servicer and a wholly-owned subsidiary of JPMorgan. (Id. ¶ 12.)

I. <u>The Home Affordable Modification Program</u>

In 2009, in response to the housing crisis, the United States Department of the Treasury created the Home Affordable Modification Program ("HAMP"). (Id. ¶ 14.) HAMP was designed to incentivize mortgage lenders to modify first lien mortgage loans for eligible homeowners. (Id. ¶¶ 14-15.) The Treasury Department designated Fannie Mae, in its capacity as a financial agent of the United States, to administer HAMP. (Id. ¶ 15.)

In July 2009, JPMorgan and Fannie Mae entered into a "Service Participation Agreement for the Home Affordable Modification Program" (the "SPA") under which JPMorgan agreed to participate in HAMP and to be bound by HAMP's guidelines (the "HAMP Guidelines"). (Id. ¶¶ 16-17.) Chase Home Financing signed a similar agreement in April 2009. (Id. ¶ 17.) Among other things, the HAMP Guidelines laid out the criteria for borrowers who were eligible for loan modifications under the program. (Id. ¶¶ 19-21.) They also set forth what

2

documentation would be required for candidates under the program, (id. ¶¶ 22-23), and they specified that lenders must halt foreclosure proceedings against borrowers whose applications for loan modifications were pending (id. ¶ 25).

Under HAMP, eligible borrowers would be enrolled in a Temporary Payment Plan ("TPP"). (Id. ¶ 26; Pl. Ex. A, HAMP Guidelines, § 8.) The TPP would typically last three months, during which time the borrower would have to make timely mortgage payments and provide certain financial documentation. The HAMP Guidelines provided that "[b]orrowers who make all trial period payments timely and who satisfy all other trial period requirements will be offered permanent modification." (HAMP Guidelines § 8.) "A borrower in a TPP may receive a permanent modification as long as the servicer has received all required trial period payments timely and all other required documentation from the borrower, including a fully executed Modification Agreement." (Id. § 9.)

II. Plaintiffs' Attempt to Modify their Home Mortgage Loan

The gravamen of Plaintiffs' case is that Defendants engaged in "deny and delay" tactics that prevented Plaintiffs from securing a permanent loan modification despite their timely compliance with their TPP. (See Compl. ¶ 30.)

A. Plaintiffs' TPP

After Mr. Picini lost his job in October 2008 (id. ¶ 33), Plaintiffs contacted Chase Home Financing to obtain a loan modification (id. ¶ 34). They were told that nothing could be done until they fell at least three months behind on their payments. (Id. ¶ 35.) Based on this advice, Plaintiffs did not make their December 2008 payment (id. ¶ 36), and they eventually defaulted on their loan (see id. ¶ 38). Nevertheless, their repeated requests for a loan modification fell on deaf ears. (See id. ¶¶ 41, 47.) Plaintiffs filed for bankruptcy in May 2009, but Defendants obtained relief from the automatic stay and initiated foreclosure proceedings in New York State Supreme Court, Nassau County (the "Foreclosure Action"). (Id. ¶¶ 45-46.)

While the Foreclosure Action was pending, Plaintiffs learned of HAMP through a friend, and they applied for a loan modification in February 2010. They were approved for a three-month TPP in March 2010. (Id. ¶¶ 55-56.) An unspecified representative of one of the Defendants told Plaintiffs that it was "pretty definite" that Plaintiffs would receive a permanent modification. (Id. ¶ 57.)

Under their TPP, Plaintiffs were required to make

monthly payments of $1,600.02. (Id. ¶ 58.)[1] The TPP provided that, upon Plaintiffs' successful completion of the trial period, Defendants "will send [Plaintiffs] a Modification Agreement . . . which will modify the Loan as necessary to reflect this new amount." (Id. ¶ 61.) The TPP also stated that "[i]f all payments are made as scheduled, we will consider a permanent workout solution for your loan." (Id. ¶ 62.) Plaintiffs allege that, contemporaneously with offering the TPP, Defendants represented that the Foreclosure Action would be stayed while Plaintiffs were enrolled in the TPP. (Id. ¶ 64.)

> B. Plaintiffs' Loan is not Permanently Modified Despite their Compliance with the TPP

The remainder of the Complaint describes Plaintiffs' ultimately unsuccessful attempt to obtain a permanent loan modification despite their timely compliance with the terms of their TPP contract. The Court will address specific allegations as necessary in the discussion below, but in general terms Plaintiffs allege that they made the required monthly payments during the three-month TPP term (id. ¶¶ 65, 66, 73) but did not receive any information from Defendants about their permanent loan modification (id. ¶ 69). An unspecified representative of Defendants eventually explained that the loan modification

---

[1] Neither side provided the Court with a copy of Plaintiffs' TPP contract.

department was "backed up" and advised Plaintiffs to continue making payments under the TPP after the three-month trial period had run. (Id. ¶¶ 71-72; see also id. ¶ 186(e).) Plaintiffs made payments for another seven months but did not hear from Defendants during this time. (Id. ¶ 74.)

Plaintiffs eventually heard from Defendants in October 2010 in the first of what would be a frustrating series of conflicting communications. On October 18, a representative of Defendants named Bridget told Plaintiffs that they had been dropped from their TPP and that the Foreclosure Action would resume in February 2011. (Id. ¶¶ 75-84.) Bridget nevertheless advised Plaintiffs to continue making payments under the TPP. (Id. ¶ 85.) Plaintiffs were similarly advised to continue making TPP payments when they spoke with an unnamed representative of Defendants on the phone. (Id. ¶ 87.) Shortly after Plaintiffs complained to their representatives in state and federal government, however, Defendants sent Plaintiffs a letter congratulating them on completing the TPP. (Id. ¶¶ 88-89.) But when Plaintiffs called the phone number included in that letter, they were told that they had been dropped from HAMP. (Id. ¶ 90.)

On October 29, 2010, Plaintiffs received a phone call from Defendants informing them that Loretta Stephens, from the

6

"Chase Resolutions Group," had been assigned to their case. (Id. ¶ 93.) Stephens and other representatives of Defendants allegedly provided Plaintiffs with conflicting information about what additional documents Plaintiffs needed to submit (e.g., id. ¶¶ 96-98, 113, 116-117; see also id. ¶¶ 108-09), the status of the Foreclosure Action (id. ¶¶ 103, 135-36), and even who from Defendants was responsible for Plaintiffs' file (id. ¶¶ 114, 119). After months of getting the runaround, Plaintiffs were told in March 2011 that their application for a permanent loan modification was denied because Plaintiffs' home had a negative "net present value." (Id. ¶ 147.) This lawsuit followed.

## DISCUSSION

Plaintiffs assert the following claims: (1) breach of the SPA on a third-party beneficiary theory; (2) breach of the SPA's covenant of good faith and fair dealing on a third-party beneficiary theory; (3) breach of the TPP contract on a direct contract theory; (4) breach of the TPP's covenant of good faith and fair dealing on a direct contract theory; (5) in the alternative, breach of an implied contract; (6) in the alternative, promissory estoppel; (7) fraud; (8) negligent misrepresentation; and (9) unjust enrichment. The Court first discusses the legal standard governing Defendants' motion and then considers Plaintiffs' claims in turn.

## I. Legal Standard

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The standard for motions made pursuant to Rule 12(b)(1) is "substantively identical" to those made under Rule 12(b)(6). Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).

II. Underline: Application

      For the following reasons, Defendants' motion is granted in part and denied in part.

  A. Third-Party Beneficiary Claims

      Plaintiffs' third-party beneficiary claims fail as a matter of law because Plaintiffs do not have standing to sue on the SPA.  At the outset, the SPA explicitly provides that it is governed by federal common law, "not the law of any state or locality."  (Def. Ex. B, SPA § 11.A.)  "According to federal common law, a third party must be an intended, rather than incidental, beneficiary in order to enforce a contract." Rivera v. Bank of Am. Home Loans, No. 09-CV-2450, 2011 WL 1533474, at *3-4 (E.D.N.Y. Apr. 21, 2011) (quoting Kinek v. Gulf & W., 720 F. Supp. 275, 280 (S.D.N.Y. 1989)).  In determining whether a plaintiff was an intended beneficiary of a contract, courts are guided by the Restatement of Contracts.  Id.  In the case of government contracts, the Restatement (Second) of Contracts explains that:  "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Restatement (Second) of Contracts § 313 cmt. a(2).  To state a third-party beneficiary claim on a government contract, plaintiffs must allege that they were "intended to benefit from

9

the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it." Rivera, 2011 WL 1533474, at *4.

In this case, Plaintiffs only satisfy half of this test. They meet the first requirement because HAMP and the SPA were intended to stimulate loan modifications for homeowners like Plaintiffs. Id. Indeed, as one court noted, "it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers." Marques v. Wells Fargo Home Mortg., Inc., No. 09-CV-1985, 2010 WL 3212131, at *6 (S.D. Cal. Aug. 12, 2010). Plaintiffs do not, however, satisfy the second element because there is no hint that third-party actions are consistent with the SPA or with the policy underlining the SPA or HAMP. See Rivera, 2011 WL 1533474, at *5-6.

This conclusion is in line with the vast majority of courts, including those in this Circuit, that have rejected third-party breach of contract claims arising out of HAMP and SPAs. See, e.g., Nelson v. Bank of Am., N.A., No. 11-CV-11091, 2011 WL 5138591, at *1 (11th Cir. Oct. 31, 2011) (no private right of action under HAMP); Thomas v. JPMorgan Chase & Co., __ F. Supp. 2d __, 2011 WL 3273477, at *9 (S.D.N.Y. July 29, 2011); Rivera, 2011 WL 1533474, at *6 ("With very few

10

exceptions, almost all federal courts to have addressed this precise issue have rejected borrowers' claims to enforce the Servicer Participation Agreements as third party beneficiaries.").

Plaintiffs' cases on this point are not persuasive. In Sampson v. Wells Fargo Home Mortgage, Inc., No. 10-CV-08836, 2010 WL 5397236, at *3 (C.D. Cal. Nov. 19, 2010), the court granted a homeowner a temporary restraining order because she had made a "substantial showing" that she had a right to enforce the HAMP contract. The court appeared only to consider whether the homeowner was an intended beneficiary of the contract, though, and not whether third-party rights were consistent with the terms of the agreement. Id. Moreover, the court acknowledged the defendant's arguments, including that plaintiff lacked standing, and "conclude[d] that although they may have merit, the court is under time constraints as Plaintiff alleges her home is to be sold today." Id. With more time than the Sampson court to consider the issue, this Court reaches a different conclusion. Similarly, in Reyes v. Saxon Mortgage Services, Inc., No. 09-CV-1366, 2009 WL 3738177, at *2 (S.D. Cal. Nov. 5, 2009), the court found that the plaintiff had plausibly alleged a third-party beneficiary claim but apparently did not consider whether third-party rights were consistent with

11

the agreement. Plaintiffs are correct that the court in Marques concluded that the plaintiff may be able to state a third-party beneficiary claim under a HAMP contract and granted leave to amend. 2010 WL 3212131, at *7. Respectfully, this Court disagrees with the Marques court and sides with the majority of courts that have rejected its holding. See Parker v. Bank of Am., NA, Civil Action No. 11-1838, 29 Mass. L. Rptr., 1942011 WL 6413615, at *7 (Mass. Super. Dec. 16, 2011) (following Marques but noting that "every court in the District of Massachusetts (and as far as I know, elsewhere) to consider the issue has rejected the Marques holding").

Accordingly, Plaintiffs' third-party beneficiary claims (claims one and two) are dismissed.

B. Direct Contract Claims

Plaintiffs' direct contract claims--for breach of contract, breach of the covenant of good faith and fair dealing, and, in the alternative, breach of an implied contract--are predicated on the TPP document between Plaintiffs and Chase Home Financing. (Pl. Opp. 7.) Specifically, Plaintiffs claim that Defendants breached the TPP by accepting Plaintiffs' payments under the TPP and then failing to modify Plaintiffs' loan. (Compl. ¶¶ 162-64.)

To state a claim for breach of contract, a plaintiff

must allege "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994). Plaintiffs have plausibly alleged that Defendants contracted to permanently modify Plaintiffs' loan in exchange for Plaintiffs' compliance with the TPP during the three-month trial period, Defendants breached the agreement, and Plaintiffs suffered damages as a result. On the consideration point, Defendants suggest that there was no consideration for the alleged contract because the TPP simply obligated Plaintiffs to continue making mortgage payments pursuant to a preexisting duty. The TPP required Plaintiffs to do more than just make the payments that they were already obligated to make, however; the alleged contract required Plaintiffs to provide Defendants with documents describing Plaintiffs' financial picture. This satisfies the consideration requirement. Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 352 (D. Mass. 2011).

Defendants argue that (1) these claims are simply disguised HAMP claims; (2) Plaintiffs have failed to allege the terms of the supposed contract, and (3) in any event, the TPP was not a promise to permanently modify Plaintiffs' loan. (Def. Br. 8; Def. Reply 4-8.) These arguments are unavailing.

On the record before it, the Court is not persuaded

that Plaintiffs' TPP theory is simply a HAMP claim in disguise. Defendants rely on Wigod v. Wells Fargo Bank N.A., No. 10-CV-2348, 2011 WL 250501, at *4–5 (N.D. Ill. Jan. 25, 2011) and a handful of other cases for the proposition that:

> Because "the alleged offer to modify came about and was made wholly under the rubric of HAMP, as were [the plaintiff]'s alleged actions in acceptance of the offer, i.e., submitting the required documentation, and the alleged consideration, i.e. remitting reduced loan payments, [the plaintiff] fails to state a cause of action independent of HAMP, for which there is no private right of action."

Wigod, 2011 WL 250501, at *5 (quoting Vida v. OneWest Bank, F.S.B., No. 10-CV-987, 2010 WL 5148473, *3-4 (D. Or. Dec. 13, 2010)). This argument is not persuasive, as other courts have recognized. See Fletcher v. OneWest Bank, FSB, 798 F. Supp. 2d 925, 930 (N.D. Ill. 2011). Here, Defendants have not pointed to any "rule that where a state common law theory provides for liability for conduct that is also violative of federal law, a suit under the state common law is prohibited so long as the federal law does not provide for a private right of action." Fletcher, 798 F. Supp. 2d at 930-31. Nor have they argued that HAMP preempts state law breach of contract claims in this context. See id.; see also Bosque, 762 F. Supp. 2d at 351. Accordingly, the Court rejects Defendants' argument that

Plaintiffs' claim of breach of the TPP is foreclosed simply because they are not third-party beneficiaries to the SPA--a different contract.

Defendants' remaining two arguments--that Plaintiffs have not stated the alleged terms of the contract and that, in any event, the TPP was not a contract--were raised for the first time in Defendants' reply and are thus rejected outright. E.g., Atlantis Info. Tech., GmbH v. CA, Inc., No. 06-CV-3921, 2011 WL 4543252, at *9-10 (E.D.N.Y. Sept. 28, 2011). Were it to consider their arguments, however, the Court would disagree with Defendants. Plaintiffs sufficiently stated the terms of the TPP upon which liability is based (Compl. ¶¶ 61-62), and Defendants' cases are not to the contrary, see, e.g., Chrysler Capital Corp. v. Hilltop Egg Farms, Inc., 129 A.D.2d 927, 928, 514 N.Y.S.2d 1002 (3d Dep't 1987) (concluding that complaint alleging a breach of a contract for failure to make scheduled payments but to set forth the purported payment schedule failed to state a breach of contract claim). Here, Plaintiffs have expressly referenced the pertinent terms of the alleged contract. See id.; see also Kaplan v. Aspen Knolls Corp., 290 F. Supp. 2d 335, 337 (E.D.N.Y. 2003) (noting that "the complaint must plead the terms of the agreement upon which defendant's liability rests" (quoting Posner v. Minn. Min. & Mfg. Co., 713 F. Supp. 562, 563

15

(E.D.N.Y. 1989) (emphasis added))).

Defendants' argument that the TPP is not a contract would also fall short. Defendants maintain that the vast majority of courts have concluded that the TPP did not amount to a binding contract unless and until a permanent loan modification agreement was signed. (Def. Reply 7-8.) These cases rely on language in the TPP to the effect that the mortgage lender was not obligated to modify the borrowers' loans until the borrower received a fully-executed permanent Modification Agreement. See <u>Lonberg v. Freddie Mac</u>, 776 F. Supp. 2d 1202, 1209 n.1 (D. Or. 2011). This logic is persuasive but irrelevant because this language is not alleged to be part of Plaintiffs' TPP and the Court does not have a copy of Plaintiffs' TPP before it.

Accordingly, Defendants' motion to dismiss Plaintiffs' third, fourth, and fifth claims is denied.

C. <u>Promissory Estoppel</u>

Defendants argue that Plaintiffs' promissory estoppel claim fails because it is duplicative of their contract claims and because Defendants made no promise. (<u>See</u> Def. Reply 8.) To state a promissory estoppel claim, a plaintiff must allege "a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made and an injury

16

sustained in reliance thereon." Braddock v. Braddock, 60 A.D.3d 84, 95, 871 N.Y.S.2d 68, 77 (1st Dep't 2009) (citing Williams v. Eason, 49 A.D.3d 866, 868, 854 N.Y.S.2d 477 (2d Dep't 2008)). "Where a plaintiff also alleges breach of a contract, a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." Underdog Trucking, L.L.C., Reggie Anders v. Verizon Servs. Corp., No. 09-CV-8918, 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010). Here, Plaintiffs allege that they relied on Defendants' promise that Plaintiffs would obtain a permanent loan modification if they continued to make payments under the TPP even after the three-month trial period expired. (Compl. ¶¶ 71, 179, 186(e).) They further alleged that they relied on Defendants' promise to their detriment because they opted not "to pursue other strategies to deal with their default and prevent foreclosure" while the extended trial period was in effect. (Id. ¶ 184.) These allegations are sufficient to state a promissory estoppel claim that is independent from Plaintiffs' TPP contract claim.

Defendants also argue that because the TPP on its face did not obligate Defendants to give Plaintiffs a permanent loan modification, Plaintiffs' supposed reliance on Defendants' promise to extend the trial period was, as a matter of law, not

reasonable. (Def. Reply 8.) As explained already, however, the Court does not have the TPP before it and thus may rely only on Plaintiffs' allegations and accept them as true for the purposes of this motion. In doing so, it cannot reach the same conclusion as courts that have found that other TPPs issued to other borrowers had language to the effect that the lender was not bound to permanently modify any loans. See supra page 16.

Accordingly, Defendants' motion to dismiss Plaintiffs' sixth claim is denied.

D. Fraud and Negligent Misrepresentation

Defendants argue that Plaintiffs' fraud and negligent misrepresentation claims should be dismissed as duplicative of their breach of contract claims. (Def. Br. 10.) "The elements of a cause of action sounding in fraud are a material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages." Orchid Const. Corp. v. Gonzalez, 89 A.D.3d 705, 707-708, 932 N.Y.S.2d 125, 127-28 (2d Dep't 2011) (citations omitted). As a general matter, Defendants are correct that "[a] fraud claim may coexist with a breach of contract cause of action only where the alleged fraud constitutes the breach of a duty separate and apart from the duty to abide by the terms of the contract." Verizon N.Y.,

Inc. v. Optical Commc'ns Grp., Inc., 936 N.Y.S.2d 86, 89 (1st Dep't 2011); see also Pollak v. Moore, 85 A.D.3d 578, 579, 926 N.Y.S.2d 434, 436 (1st Dep't 2011). Nevertheless, Plaintiffs can state a fraud claim where the alleged misrepresentations concerned duties apart from Defendants' duties under the TPP. Eden Rock Fin. Fund, L.P. v. Gerova Fin. Grp. Ltd., 34 Misc. 3d 1205(A), 2011 WL 6955884, at *4 (N.Y. Sup. 2011). And, with respect to alleged misrepresentations that Defendants would put the Foreclosure Action on hold while Plaintiffs were enrolled in the TPP and that they would offer Plaintiffs a permanent loan modification if Plaintiffs continued to make payments after the three-month TPP expired, the Court agrees that Plaintiffs set forth a theory that is independent of the TPP. They have stated a claim only with respect to the foreclosure allegations, however.

With respect to the foreclosure, Plaintiffs allege that Defendants promised that if Plaintiffs enrolled in the TPP, Defendants would place the Foreclosure Action on hold. (Compl. ¶ 64.) Plaintiffs relied on this representation (id. ¶ 191), which Defendants knew to be false (id. ¶ 187), and as a result suffered additional arrearages, costs, and fees to accumulate (id. ¶ 4). This promise was apart from the alleged bargained-for deal set forth in the TPP contract--that Plaintiffs would

19

receive a permanent loan modification if they made timely payments for three months and provided the required documentation--and thus Plaintiffs have stated an independent cause of action. See Eden Rock, 2011 WL 6955884, at *4 (refusing to dismiss fraud claim as duplicative of contract claim where alleged fraudulent promise was not also contained in the written contract).

With respect to the post-TPP misrepresentations, Plaintiffs allege that after the three-month TPP had expired, they were fraudulently induced to continue making payments in exchange for a promise that their loan would be permanently modified. (Compl. ¶ 186(e).) Defendants knew this representation to be false (id. ¶ 187) and Plaintiffs relied on it (id. ¶ 191). See Orchid Const. Corp. v. Gottbetter, 89 A.D.3d 708, 710, 932 N.Y.S.2d 100, 103 (2d Dep't 2011) (listing the elements of a fraudulent inducement claim). Plaintiffs have not, however, alleged that their reliance on Defendants' misrepresentations caused them damages beyond their continuing to make mortgage payments (which they were required to do anyway), their "repeatedly gathering and sending over the same documentation," and their "foregoing the opportunity to pursue other avenues to save their home from foreclosure." These are insufficient to state a fraud claim. E.g., Dress Shirt Sales,

Inc. v. Hotel Martinique Assocs., 12 N.Y.2d 339, 343, 190 N.E.2d 10, 12, 239 N.Y.S. 2d 660, 663 (1963) ("[I]n an action for damages for fraud actual pecuniary loss must be shown."); Rivera v. Wyckoff Heights Hosp., 184 A.D.2d 558, 561, 584 N.Y.S.2d 648, 650 (2d Dep't 1992); see also Starr Found. v. Am. Int'l Grp., Inc., 76 A.D.3d 25, 27, 901 N.Y.S.2d 246, 248-49 (1st Dep't 2010) (under New York's out-of-pocket rule, "[t]he true measure of damages [for fraud] is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" (citations and quotation marks omitted)). Accordingly, Plaintiffs' fraud claim premised on Defendants' fraudulently inducing them to continue making payments after the three-month TPP had expired is dismissed and Plaintiffs may amend their Complaint.

The Court now turns to Plaintiffs' negligent misrepresentation claim. To state a claim, a plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." MatlinPatterson ATA Holdings L.L.C. v. Fed. Express Corp., 87 A.D.3d 836, 840, 929 N.Y.S.2d 571, 575 (1st Dep't 2011) (quoting JAO Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585 (2007)). Defendants argue that

they did not have a special relationship with Plaintiffs and thus cannot be liable for negligent misrepresentation.

Plaintiffs have adequately alleged a special relationship to survive a motion to dismiss. Whether the parties had a special relationship is often a question of fact, to be resolved by considering "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." Fleet Bank v. Pine Knoll Corp., 290 A.D.2d 792, 795-796, 736 N.Y.S.2d 737, 741 (3d Dep't 2002) (quoting Kimmell v. Schaefer, 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)). Plaintiffs allege that Defendants possessed "special expertise" and "sophisticated understanding of servicing mortgage loans and of available loss mitigation options." (Compl. ¶ 9.) They also allege that Defendants assigned them a manager from the "Chase Resolutions Group" to help guide them through the loan modification process (id. ¶¶ 93, 97-98), and that a series of Defendants' representatives-- under the guise of resolving Plaintiffs' situation--provided them with conflicting information (e.g., id. ¶¶ 103-04). Although a typical borrower-lender relationship will not support

a negligent misrepresentation claim, <u>Dobroshi v. Bank of Am., N.A.</u>, 65 A.D.3d 882, 884, 886 N.Y.S.2d 106, 109 (1st Dep't 2009), Plaintiffs' allegations suffice at this stage, <u>see</u> <u>Fleet Bank</u>, 736 N.Y.S.2d at 741-42 (denying lender summary judgment on negligent misrepresentation claim where the evidence showed that small businesses often relied on lender's "relationship managers" for financial advice); <u>see also</u> <u>Smith v. Ameriquest Mortg. Co.</u>, 60 A.D.3d 1037, 1040, 876 N.Y.S.2d 447, 450 (2d Dep't 2009) (denying lender summary judgment where lender's representative twice went to plaintiff's house to convince her that transaction was in her best interests).

Accordingly, Defendants' motion to dismiss Plaintiffs' fraud and negligent misrepresentation claims is granted in part and denied in part. Plaintiffs' fraud claim as to the status of the Foreclosure Action survives and is dismissed in all other respects. Plaintiffs have thirty (30) days from the date of this Order to re-plead their fraud claim in an Amended Complaint. Plaintiffs' negligent misrepresentation claim survives.

E. <u>Unjust Enrichment</u>

Plaintiffs' unjust enrichment claim fails as a matter of law. "To establish unjust enrichment, a plaintiff must demonstrate that '(1) the other party was enriched, (2) at [the

plaintiff's] expense and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" Augur v. Augur, 90 A.D.3d 1111, 933 N.Y.S.2d 454, 456 (3d Dep't 2011) (quoting Levin v. Kitsis, 82 A.D.3d 1051, 1053, 920 N.Y.S.2d 131 (2d Dep't 2011)). But "the existence of a valid, written contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter," Parrott v. Logos Capital Mgmt., L.L.C., 91 A.D.3d 488, 936 N.Y.S.2d 194, 195 (1st Dep't 2012), and Defendants argue that Plaintiffs' underlying mortgage and note preclude this claim (Def. Br. 12). The Court agrees. Plaintiffs frame their unjust enrichment theory as arising out of the extra costs and fees that accrued on their account while Defendants unreasonably delayed acting on Plaintiffs' request for a loan modification. (Pl. Opp. 20.) But any fees that accrued on their account, by definition, arose out of their underlying mortgage contract and thus Plaintiffs cannot maintain a separate unjust enrichment claim. See Rossrock 2005 Fund L.L.C. v. Estate of Shui King Wong, 19 Misc.3d 1110(A), 862 N.Y.S.2d 817 (Table Decision), 2008 WL 835253, at *6 (Sup. Ct. Kings Cnty. 2008) ("Here, there can be no unjust enrichment because the matter at issue is controlled by the mortgage contract." (citation omitted)).

24

Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is granted.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

Plaintiffs' third-party beneficiary (claims one and two) and unjust enrichment (claim nine) claim are dismissed with prejudice.

Plaintiffs' TPP contract (claims three, four, and five), promissory estoppel (claim six), and negligent misrepresentation (claim eight) claims survive.

Plaintiffs' fraud claim (claim seven) as to the status for Foreclosure Action survives and is dismissed without prejudice in all other respects. Plaintiffs have thirty (30) days from the date of this Order to re-plead their fraud claim in an Amended Complaint.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:      February  16 , 2012
            Central Islip, New York